No. 18-3327

---

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

---

### TRISHA DORAN, M.D.

*Plaintiff-Appellant,*

**v.**

### ROBERT A. McDONALD, Secretary for the United States Department of Veterans Affairs, *et. al.,*

*Defendant-Appellees.*

On Appeal from the United States District Court
For the Southern District of Ohio
Originating Case No.: 2:16-cv-00532

---

### BRIEF OF APPELLANT TRISHA DORAN, M.D.

---

Laura A. Perkovic
CHAPMAN LAW GROUP
470 Olde Worthington Rd. Ste. 200
Westerville, Ohio 43082
Tele: (614) 360-3848
Fax: (248) 644-6324
Email: LPerkovic@chapmanlawgroup.com
*Counsel for Appellant, Trisha Doran, M.D.*

### ORAL ARGUMENT REQUESTED

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: <u>18-3327</u>    Case Name: <u>Trisha Doran, M.D. v. McDonald, et. al.</u>

Name of counsel: <u>Laura A. Perkovic</u>

Pursuant to 6th Cir. R. 26.1, <u>Trisha Doran, M.D.</u>
makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation? If
    Yes, list below the identity of the parent corporation or affiliate and the
    relationship between it and the named party:

| |
|---|
| **No.** |

2.  Is there a publicly owned corporation, not a party to the appeal, that has a
    financial interest in the outcome? If yes, list the identity of such corporation
    and the nature of the financial interest:

| |
|---|
| **No.** |

| CERTIFICATE OF SERVICE |
|---|
| I certify that on <u>8/23/2018</u> the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.<br><br> <u>/s/  Laura A. Perkovic</u> |

# TABLE OF CONTENTS

| | Page |
|---|---|
| CORPORATE DISCLOSURE STATEMENT | ii |
| TABLE OF AUTHORITIES | iv |
| STATEMENT IN SUPPORT OF ORAL ARGUMENT | vi |
| JURISDICTIONAL STATEMENT | vii |
| STATEMENT OF ISSUES FOR REVIEW | 1 |
| STATEMENT OF THE CASE | 1 |
| STATEMENT OF FACTS | 3 |
| SUMMARY OF ARGUMENT | 7 |
| STANDARD OF REVIEW | 8 |
| ARGUMENT | 9 |
| CONCLUSION AND RELIEF REQUESTED | 39 |
| CERTIFICATE OF COMPLIANCE | 40 |
| CERTIFICATE OF SERVICE | 41 |
| DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS | A |

**Table of Authorities**

| Cases | Page(s) |
|---|---|
| Admin. Comm. of the Sea Ray Emps.' Stock Ownership & Profit Sharing Plan v. Robinson, 164 F.3d 981, 989 (6th Cir. 1999). | 25, 34 |
| Am. Farm Lines v. Black Ball Freight Serv., 397 U.S. 532, 538-39, 25 L. Ed. 2d 547, 90 S. Ct. 1288 (1970). | 10, 11 |
| Brantley v. Comm'r of Soc. Sec., 637 F. App'x 888, 896-97 (6th Cir. 2016). | 10, 25 |
| Bruni v. Tatsumi, 46 Ohio St. 2d 127, 134, 346 N.E.2d 673, 679 (1976). | 21 |
| Cherry Hill Vineyards, LLC v. Lilly, 553 F.3d 423, 431 (6th Cir. 2008). | 8 |
| Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985). | 9-10, 19, 22, 23 |
| Connor v. United States Civil Service Commission, 721 F.2d 1054, 1056 (6th Cir. 1983). | 10 |
| Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620, 86 S. Ct. 1018, 16 L. Ed. 2d 131 (1966). | 26, 27, 31 |
| Consol. Edison Co. of N.Y. v. N.L.R.B., 305 U.S. 197, 230, 59 S. Ct. 206, 83 L. Ed. 126 (1938). | 27, 34 |
| Cromer v. Children's Hosp. Med. Ctr. of Akron, 2015-Ohio-229, ¶ 28, 142 Ohio St. 3d 257, 264, 29 N.E.3d 921, 930. | 22 |
| Douglas v. Veterans Admin., 5 M.S.P.B. 313, 5 M.S.P.R. 280 (1981). | 36, 37-38 |
| Durr v. Shinseki, 638 F.3d 1342, 1346 (11th Cir. 2011). | 8 |
| Lenscrafters, Inc. v. Robinson, 403 F.3d 798, 802 (6th Cir. 2005). | 8 |
| McDonald v. W.-S. Life Ins. Co., 347 F.3d 161, 172 (6th Cir. 2003). | 25-26 |
| Moon v. Unum Provident Corp., 405 F.3d 373, 379 (6th Cir. 2005). | 26 |
| Payne v. Comm'r of Soc. Sec., 402 F. App'x 109, 111 (6th Cir. 2010). | 26, 31 |
| Qian v. Shinseki, 747 F. Supp. 2d 1362, 1367 (S.D. Fla. 2010). | 9 |
| R.P. Carbone Constr. Co. v. Occupational Safety & Health Review Comm'n, 166 F.3d 815, 818 (6th Cir. 1998). | 26, 27 |
| Taylor v. Principi, 92 F. App'x 274, 276-77 (6th Cir. 2004). | 25, 31, 36 |
| Van Fossen v. Dep't of Housing & Urban Development, 748 F.2d | 38, 39 |

| | |
|---|---|
| 1579, 1581 (Fed. Cir. 1984). | |
| Vitarelli v. Seaton, 359 U.S. 535, 545, 3 L. Ed. 2d 1012, 79 S. Ct. 968 (1959). | 10, 20 |
| Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 546-47 (6th Cir. 2004). | 10 |

| **Statutes, Rules, Constitutional Provisions** | **Pages** |
|---|---|
| U.S. CONST. AMEND. V | 7, 9 |
| 28 U.S. Code § 1291 | viii, |
| 38 U.S. Code § 7401 | vii, 9, 11, 12 |
| 38 U.S.C. §7462 | vii, 7, 8, 9, 11, 21 |
| Dep't of Veterans Affairs Veterans Health Administration Handbook 1100.17, https://www.va.gov/vhapublications/ViewPublication.asp?pub_ID=2135 (last visited July 14, 2018) | 17 |
| Dep't of Veterans Affairs Veterans Health Administration Handbook 1100.19, https://www.va.gov/vhapublications/ViewPublication.asp?pub_ID=2910 (last visited August 18, 2018) | *Pas-sim* |
| Dep't of Veterans Affairs Handbook 5021, www.va.gov/vapubs/viewPublication.asp?Pub_ID=231 (last visited August 15, 2018) | *Pas-sim* |

## STATEMENT IN SUPPORT OF ORAL ARGUMENT
## FRAP 34; 6 Cir. R. 34.

Appellant Trisha Doran, M.D. hereby respectfully requests oral argument on the present appeal. This case involves a detailed factual record and unique procedural rules of the Department of Veterans Affairs leading to her removal from service as a physician at the Chalmers P. Wylie VA Ambulatory Care Center in Columbus, Ohio. Oral argument will aid the Court by allowing the parties to thoroughly present the issues raised in this appeal and respond to any inquiries raised by the Court.

## JURISDICTIONAL STATEMENT

On June 13, 2016, Plaintiff-Appellant Trisha Doran, M.D. ("Dr. Doran") filed her Complaint in the United States District Court for the Southern District of Ohio pursuant to 38 U.S.C. §7462(f), which allows for judicial review of an order or decision of a Disciplinary Appeals Board (hereinafter "DAB") as reviewed by the Secretary of Veterans Affairs adversely affecting physicians appointed to the Veterans Health Administration (hereinafter "VHA") under 38 U.S. Code § 7401(1). In Dr. Doran's underlying administrative case, Defendant United States Department of Veterans Affairs executed the decision of the DAB sustaining the major adverse action taken by the Chalmers P. Wylie VA Ambulatory Care Center in Columbus, Ohio (hereinafter "Columbus VA") revoking her clinical privileges and removing Dr. Doran from federal service.

On March 10, 2017, Dr. Doran moved for summary judgment pursuant to Fed. R. Civ. P. 56. (Motion for Summary Judgment, RE 30.) On April 7, 2017, the Defendants (collectively referred to herein as "VA") opposed summary judgment and moved to affirm the decision of the DAB. (Opposition to Summary Judgment, RE 31.) On February 9, 2018, the District Court issued its opinion and order denying Dr. Doran's motion for summary judgment; and granting the VA's motion to affirm the decision of the DAB. (Opinion & Order, RE 39.) The District Court entered judgment on behalf of the VA. (Judgment, RE 40.)

Dr. Doran timely filed her Notice of Appeal on April 9, 2018, pursuant to Fed. R. App. P.4(a)(1)(B)(ii). (Notice of Appeal, RE 43.) This appeal is from a final order or judgment that disposes of all parties' claims. The Court of Appeals has subject matter jurisdiction over this case pursuant to 28 U.S. Code § 1291.

## STATEMENT OF ISSUES FOR REVIEW

Whether the District Court erred in denying Dr. Doran's Motion for Summary Judgment and by granting the VA's motion to affirm the decision of the DAB, since the action of the VA was, (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) obtained without procedures required by law, rule, or regulation having been followed; and (C) unsupported by substantial evidence.

## STATEMENT OF THE CASE

On August 12, 2015, the Columbus VA issued a removal letter to Dr. Doran, constituting a permanent revocation of clinical privileges and discharge from employment based on several allegations of clinical incompetence and misconduct:

Charge 1: failure to provide the standard of care;

Charge 2: lack of candor;

Charge 3: inappropriately documenting in a patient record;

Charge 4: performing a procedure without the appropriate privileges.

(Sealed Record, pp. 000171-72.)

On September 15, 2015, Dr. Doran timely submitted her Appeal of Disciplinary Action to the Department of Veterans Affairs Undersecretary of Health. (Sealed Record, pp. 946-62.) On January 25-26, 2016 the DAB hearing took place. (Sealed Record, pp. 001270-2297.) On March 21, 2016, the DAB

rendered its decision upholding the Columbus VA's adverse action of discharge, which decision was approved by the Undersecretary for Health on May 13, 2016. (Sealed Record, pp. 002298-2321.) Of the charges and specifications stated in the June 2, 2015 removal (Sealed Record, pp. 000001-4), the DAB upheld only Charge 1, Specification 1 concerning a January 26, 2015 procedure involving Patient A; and Charge 3, involving the allegation of inappropriately documenting in Patient A's clinical record. (Sealed Record, pp. 002302-2308.)

On June 13, 2016, Dr. Doran filed a Complaint in the United States District Court alleging that the Defendants Robert McDonald Secretary for the United States Department of Veterans Affairs and the United States Department of Veterans Affairs acted (1) in violation of Dr. Doran's due process rights; (2) arbitrarily and capriciously; and (3) without substantial evidence when it terminated Dr. Doran's employment. (Complaint, RE 1.) On December 2, 2016, the VA filed its answer to Dr. Doran's Complaint, denying the substantive allegations. (Answer, RE 20.) Thereafter, the parties filed and briefed issues on summary judgment. (Motion for Summary Judgment, RE 30; Opposition to Summary Judgment, RE 31; Doran Response on Summary Judgment, RE 36; VA Reply on Summary Judgment, RE 38.) On February 9, 2018, the District Court issued its Opinion & Order on the parties' dispositive motions, denying Dr. Doran's motion for summary judgment, and granting the VA's motion to affirm

the decision of the DAB. (Opinion & Order, RE 39.) The District Court also entered a judgment on behalf of the VA. (Judgment, RE 40.)

## STATEMENT OF THE FACTS

Dr. Trisha Doran is a board-certified gastroenterologist and licensed physician in the State of Ohio who began working for the U.S. Department of Veterans Affairs Chalmers P. Wylie VA Ambulatory Care Center in December 2008. (Sealed Record, pp. 000010, 000083-86.) She earned consistently high praise from her patients and evaluators from 2008 to 2014. (Sealed Record, pp. 000010, 00083-86.)

Beginning in 2015, Dr. Doran was the subject of a several allegations of professional wrongdoing culminating in a revocation of clinical privileges and termination from employment. The two allegations that survived DAB review and that remain for this Court's review involve only "Patient A." Charge 1, Specification 1 involves failure to provide standard of care. Specifically, the allegation states:

> On January 26, 2015, Patient A was scheduled for an esophagogastroduodenoscopy ("EGD") and colonoscopy. This patient had multiple comorbidities, and you assessed him as an ASA II. The procedure was not done under monitored anesthesia care (MAC). Based on the patients [sic] complex medical history you should have considered initiating the sedation process with lower doses of medication or asking for assistance from Anesthesiology. Instead, you gave him a rapid dose of 100 milligrams of Fentanyl and 2 milligrams of versed intravenous push. Given the patient's medical history, this was an excessive amount of medication. The patient began to

desaturate, and became unresponsive. A code blue was called. The patient was critically ill and was hospitalized for over 30 days. He has since been discharged to a nursing home, whereas, previously he was living independently. The third party gastroenterologist and anesthesiologist who reviewed this case were critical of the care you provided.

(Sealed Record, p. 000001.) Charge 3 alleges inappropriate documentation in Patient A's record. It reads:

On March 16, 2015, you added an addendum to the CPRS note of Patient A. In the addendum, you specified the specific times that you have alleged that you gave a verbal order for Narcan to be administered to the patient. This addendum was added well after the adverse event on January 26, 2015, and after you received notice that your actions were under investigation.

You asked Janet Gerkin, the RN involved in the case, to cosign your addendum that indicated that you gave a verbal order for Narcan. Ms. Gerkin declined to cosign the addendum, and told you again that she did not hear you give a verbal order.

Based on the testimony of the other personnel involved in the event, the AIB concluded that you did not, in fact, give a verbal order for Narcan during the event. Your addendum is contradictory to all other testimony of the other personnel involved in the event, as well as the other documented CPRS accounts of the event.

(Sealed Record, p. 000002-3.)

There is no dispute over most operative material facts surrounding the events that occurred during Patient A's procedure on January 26, 2015, specifically:

1. Dr. Doran administered 100 mcg of fentanyl and 2 mg of Versed to Patient A for anesthesia prior to performing a procedure. (Sealed Record, p. 002146.)

2. After the administration of the anesthesia, the patient became apneic and unresponsive. (Sealed Record, p. 002146.)

3. Dr. Doran verbally ordered sedation reversal agents. The parties disputed whether Dr. Doran verbally ordered Narcan, but do not dispute that Dr. Doran ordered Flumazenil. (Sealed Record, pp. 000341-347, 002146.) Flumazenil was administered. (Sealed Record, p. 002150.) The DAB found that Dr. Doran may have requested the Narcan, though perhaps not clearly audible; but the DAB did not believe that Dr. Doran failed to order Narcan. (Sealed Record, p. 002306.)

4. Dr. Varma, an anesthesiologist, arrived and placed an oral airway in the patient, at which point the patient became bradycardic and the heart rate fell. (Sealed Record, pp. 000472-73, 002148.)

5. A nurse administered atropine which Dr. Doran did not order; at which point the patient went into cardiac arrest (asystole) for less than one minute; then back to normal sinus rhythm and open airway. (Sealed Record, p. 002146.)

6. Another physician, Dr. McKeon, arrived and determined that Narcan was not necessary since the patient had been intubated. (Sealed Record, p. 000485.)

7. Patient A was then stable, except for hypertension. (Sealed Record, p. 002151.)

8. The patient was taken by EMS to a local hospital. (Sealed Record, p. 002152.)

9. On a later date, Dr. Doran placed an addendum in Patient A's record reflecting that she had ordered Narcan, but that it was not given. (Sealed Record, pp. 000341-347.)

Dr. Doran's clinical privileges were summarily suspended on January 30, 2015. (Sealed Record, pp. 001999, 002166.) A Professional Standards Board ("PSB") review followed, where she was recommended for a fitness for duty evaluation and mentoring/proctoring/education. (Sealed Record, p. 000634-636.) From there, the case underwent Medical Executive Board ("MEB") review, where it was decided her clinical privileges would be revoked. (Sealed Record, p. 000544.) Within this process an Administrative Investigation Board ("AIB") review was conducted, concluding that Dr. Doran did not give a verbal order for Narcan for Patient A, and inappropriately amended Patient A's medical record. (Sealed Record, pp. 000341-347). The events led to Dr. Doran's removal from federal service. (Sealed Record, pp. 000171-172). These proceedings did not follow the procedural rules set forth in relevant governing documents: Department of Veterans Affairs and Veterans Health Administration Directives and Handbooks, and the Columbus VA Bylaws.

# SUMMARY OF ARGUMENT

I. **THE VA ACTIONS WERE TAKEN WITHOUT REVERENCE TO PROCEDURES REQUIRED BY LAW, RULE, AND REGULATION; THEREBY DEPRIVING DR. DORAN OF HER FIFTH AMENDMENT RIGHTS TO DUE PROCESS. U.S. CONST. AMEND. V; 38 U.S.C. § 7462(F)(2)(B).**

    A. <u>Both the imposition and the continued summary suspension of privileges were improper and in violation of Due Process.</u>

    B. <u>The VA failed to provide notice of the basis for the charges and the specific law, regulation, policy, procedure, practice, or other specific violation with respect to each charge.</u>

    C. <u>The DAB strayed from the allegations in Charge 1, Specification 1, in sustaining the VA's action.</u>

    D. <u>Improper *ex parte* influence occurred during the investigation at the Columbus VA.</u>

II. **THE VA ACTIONS WERE "UNSUPPORTED BY SUBSTANTIAL EVIDENCE" AND "ARBITRARY, CAPRICIOUS, AN ABUSE OF DISCRETION, OR OTHERWISE NOT IN ACCORDANCE WITH LAW." 38 U.S.C. § 7462(F)(2)(A) AND (C).**

    A. <u>Standard of Care Analysis: Allegation of Excessive Sedation.</u>

    B. <u>Standard of Care Analysis: Allegation of Severity of Outcome.</u>

    C. <u>Charge 3 allegation of inappropriately documenting in a paper record, cannot be sustained.</u>

    D. <u>Applying the Douglas Factors, the termination is not warranted.</u>

## STANDARD OF REVIEW

This Court "review[s] de novo the district court's grant of summary judgment." <u>Cherry Hill Vineyards, LLC v. Lilly,</u> 553 F.3d 423, 431 (6th Cir. 2008) (<u>citing</u> <u>Lenscrafters, Inc. v. Robinson</u>, 403 F.3d 798, 802 (6th Cir. 2005)). In this de novo review, this Court applies the same substantive law as the district court. Dr. Doran's complaint sought judicial review of the decision of the Veterans Administration DAB which is guided by 38 U.S.C. § 7462(f). That subsection provides that a court may set aside the judgment of a DAB if it determines the judgment is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence." 38 U.S.C. § 7462(f)(2)(A)-(C). <u>Durr v. Shinseki</u>, 638 F.3d 1342, 1346 (11th Cir. 2011).

<center>**ARGUMENT**</center>

**I.    THE VA ACTIONS WERE TAKEN WITHOUT REVERENCE TO PROCEDURES REQUIRED BY LAW, RULE, AND REGULATION; THEREBY DEPRIVING DR. DORAN OF HER FIFTH AMENDMENT RIGHTS TO DUE PROCESS. U.S. CONST. AMEND. V; 38 U.S.C. § 7462(F)(2)(B).**

As a physician appointed under 38 U.S. Code § 7401(1), Dr. Doran held a Constitutionally-protected property interest in both her continued employment and her medical staff privileges at the Chalmers P. Wylie VA Ambulatory Care Center in Columbus, Ohio. *See,* U.S. Const. amend. V.  Physicians hired permanently under 38 U.S.C. § 7401(1) are statutorily entitled to due process procedures when they face an adverse employment action, such as suspension or revocation of privileges. *See* 38 U.S.C. §§ 7461-64 (listing procedural requirements, including a Disciplinary Review Board, to which persons hired permanently under 38 U.S.C. § 7401(1) are entitled). Qian v. Shinseki, 747 F. Supp. 2d 1362, 1367 (S.D. Fla. 2010).

Due process in this context includes "notice and an opportunity to respond." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985). An "employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to

present his side of the story." Id. To afford due process, parties must follow rules promulgated by the federal agency. The Supreme Court has long recognized that a federal agency is obliged to abide by the regulations it promulgates. See, Vitarelli v. Seaton, 359 U.S. 535, 545, 3 L. Ed. 2d 1012, 79 S. Ct. 968 (1959). An agency's failure to follow its own regulations "tends to cause unjust discrimination and deny adequate notice contrary to fundamental concepts of fair play and due process." Brantley v. Comm'r of Soc. Sec., 637 F. App'x 888, 896-97 (6th Cir. 2016). Where a prescribed procedure is intended to protect the interests of a party before the agency, "that procedure must be scrupulously observed." Vitarelli, 359 U.S. at 547 (Frankfurter, J., concurring).

As discussed by this Court in Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 546-47 (6th Cir. 2004), the Supreme Court has recognized the distinction between regulations "intended primarily to confer important procedural benefits upon individuals" and regulations "adopted for the orderly transaction of business before [the agency]." Am. Farm Lines v. Black Ball Freight Serv., 397 U.S. 532, 538-39, 25 L. Ed. 2d 547, 90 S. Ct. 1288 (1970). An agency's violation of its procedural rules will result in reversible error upon a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses. Connor v. United States Civil Service Commission, 721 F.2d 1054, 1056 (6th Cir. 1983). On the other hand, rules "adopted for the orderly

transaction of business" may be relaxed, and if they are not followed such action "is not reviewable except upon a showing of substantial prejudice to the complaining party." Am. Farm Lines, 397 U.S. at 539.

The parties to the proceedings in this case were required to follow the VA and VHA Handbooks (hereinafter "Handbook(s)") and the VA and VHA Directives (hereinafter "Directives"). VA Directives provide mandatory Department-wide policies. VA Handbooks prescribe mandatory Department-wide procedures or operational requirements implementing policies contained in the Directives.[1] The Handbooks and Directives contain provisions that govern the investigation, finding of cause, charges, and termination of employment in cases arising out of or including questions of professional conduct or competence of physicians like Dr. Doran appointed under 38 U.S.C. § 7401(1). These documents are supplemented by each medical facility's internal bylaws. Furthermore, 38 U.S.C. § 7462 governs notice, response, and right to Disciplinary Appeals Board ("DAB") review of major adverse actions involving professional conduct or competence.

A de novo review of the record demonstrates that the District Court erred in upholding the VA action. The District Court concluded that any violations of VA

---

[1] U.S. Department of Veterans Affairs Office of Acquisitions and Logistics Resource Library, https://www.va.gov/oal/library/dms.asp (last visited July 16, 2018).

policy[2] "…did not prevent [the DAB] from making a fair decision nor did the problems prevent Dr. Doran from being afforded due process." (Opinion & Order, RE 39, Page ID 2679, citing Sealed Record, p. 002299.) In concluding this, both the DAB and the District Court seemingly believe that as long as the DAB was able to make its own findings of fact to sustain the Columbus VA action, due process violations were harmless. This is not correct. In the context of revocation of privileges, the VA Handbook states, "Due process under all applicable policies and procedures must be afforded the practitioner." VHA Handbook 1100.19 § 14(l)(5)(a)(2)(b).[3]

For brevity and simplicity, the following chart reflects the step-by-step process for summary suspension, revocation of clinical privileges, and discharge for cases involving permanently employed physicians appointed under 38 U.S.C. 7401(1). The chart includes nationwide procedures as well as those set forth in the Columbus VA Bylaws. Local facility bylaws cannot be inconsistent with the law or any VA regulation, policy or procedure, and it is evident that the grounds for

---

[2] No specific policies were cited with reference to the specific example of Dr. Borchers' contact with the MEB; however, Dr. Doran raised repeated arguments, both general and specific, concerning the Columbus VA's disregard of policy throughout the DAB proceedings as well as in summary judgment briefing.

[3] Dep't of Veterans Affairs Veterans Health Administration Handbook 1100.19 § 14(l)(5)(a)(2)(b), https://www.va.gov/vhapublications/ViewPublication.asp?pub_ID=2910 (last visited August 18, 2018).

summary suspension delineated in the Columbus VA Bylaws are inconsistent with

VA policy. VHA Handbook 1100.19 § 3(g).[4] In such case, VA policy governs.

| Order of Events |
| --- |
| 1. Request for Investigation |
| "Whenever the behaviors, activities and/or professional conduct of any Provider with delineated clinical privileges are considered to be detrimental to patient care, to pose a threat to patient safety, to be lower than the standards of the Medical Staff, or to represent Professional Misconduct, behavior that undermines a culture of safety, or Inappropriate Behavior, as defined in these Bylaws, investigation of such Provider may be requested by the Chief of any clinical Service, the Chair of any committee of the Medical Staff, the Chief of Staff or the Facility Director. All requests for investigation **must** be made in writing to the Chief of Staff supported by reference to specific activities or conduct, which constitute the grounds for the request. The Chief of Staff promptly notifies the Director in writing of the receipt of all requests for corrective action." (Emphasis added.)<br><br>Bylaws Art. IX §1; Sealed Record, p. 001022. |
| 2. Initial Fact-Finding |
| "Whenever the Chief of Staff receives a request for investigation as described in paragraph 1 of this Article IX, a fact-finding process will be implemented. This fact-finding process should be completed within 45 days or there needs to be documentation as to why that was not possible."<br><br>Bylaws Art. IX §2; Sealed Record, p. 001023. |
| 3. Basis for Summary Suspension |
| Clinical privileges may be summarily suspended when the failure to take such action may result in an **imminent danger** to the health of any individual. |

---

[4] Dep't of Veterans Affairs Veterans Health Administration Handbook 1100.19 § 3(g), https://www.va.gov/vhapublications/ViewPublication.asp?pub_ID=2910 (last visited August 18, 2018).

| VHA Handbook 1100.19 § 14(l)(3)(c)(1).[5] |
|---|
| "If the results of the fact-finding process indicate that there is reasonable cause to believe that the behaviors, activities and/or professional conduct the Provider are likely to be detrimental to patient care, to pose a threat to patient safety, to be lower than the standards of the Medical Staff or to represent Professional Misconduct, Behavior that undermines a culture of safety, or Inappropriate Behavior, as defined in these Bylaws, the Director may impose a summary suspension of privileges in accordance with the Medical Staff Bylaws and will initiate a review by the Professional Standards Board (PSB)."<br><br>Bylaws Art. IX §2; Sealed Record, p. 001023. |
| The Director has the authority, whenever immediate action must be taken in the best interest of patient care, to summarily suspend, for cause, all or a portion of a Provider's delineated clinical privileges. Such suspension shall become effective immediately upon imposition by Facility Director.<br><br>Bylaws Art. IX §5; Sealed Record, p. 001024. |
| 4. <u>Comprehensive Review of Grounds for Summary Suspension</u> |
| When privileges are summarily suspended, a comprehensive review of the reason for summary suspension should take place within 30 days, with recommendations to proceed with formal procedures for reduction or revocation of clinical privileges forwarded to the facility Director for consideration and action.<br><br>VHA Handbook 1100.19 § 14(l)(3)(c)(1)(a).[6] |
| "The PSB investigates the charges and makes a report of the investigation to the MEC-EMB within 14 days after PSB has been convened to consider the request for corrective action. Pursuant to the investigation, the Provider being investigated has an opportunity to meet with the PSB to discuss, explain or refute the charges against him/her. This proceeding does not constitute a Hearing and none of the |

---

[5] Dep't of Veterans Affairs Veterans Health Administration Handbook 1100.19 § 14(l)(3)(c)(1), https://www.va.gov/vhapublications/ViewPublication.asp?pub_ID=2910 (last visited August 18, 2018).

[6] Dep't of Veterans Affairs Veterans Health Administration Handbook 1100.19 § 14(l)(3)(c)(1)(a), https://www.va.gov/vhapublications/ViewPublication.asp?pub_ID=2910 (last visited August 18, 2018).

procedural rules set forth in Article X of these Bylaws apply thereto. An investigation by the PSB is an administrative matter and not an adversarial hearing. A record of such proceeding is made and included with the committee's findings, conclusions and recommendations reported to the MEC."

Bylaws Art. IX §§ 3, 5(a); Sealed Record, p. 001023.

"Within 14 days after receipt of a report from the PSB, the MEC acts upon the request. If the action being considered by the MEC involves a reduction, suspension or revocation of clinical privileges, or a suspension or revocation of Medical Staff membership, the Provider is permitted to meet with the MEC prior to the committee's action on such request. This proceeding does not constitute a Hearing and none of the procedural rules set forth in Article X of these Bylaws apply thereto. A record of such proceeding is made by the MEC a. The MEC may reject or modify the recommendations; issue a warning, a letter of admonition, or a letter of reprimand; impose terms of probation or a requirement for consultation; recommend reduction, suspension or revocation of clinical privileges; recommend that an already imposed suspension of clinical privileges be terminated, modified or sustained; or recommend that the Provider's staff membership be suspended or revoked.

Any recommendation by the MEC for the reduction, suspension, or revocation of clinical privileges, or for the suspension or revocation of Medical Staff membership, entitles the Provider to the rights set forth in Article X of these Bylaws."

Bylaws Art. IX § 4; Sealed Record, p. 001023.

## 5. Decision

The facility Director must make a decision within 5 business days of receipt of the recommendations. This decision could be to exonerate the practitioner and return privileges to an active status or that there is sufficient evidence of improper professional conduct or incompetence to warrant proceeding with a reduction or revocation process.

VHA Handbook 1100.19 § 14(l)(3)(c)(1)(a).[7]

---

[7] Dep't of Veterans Affairs Veterans Health Administration Handbook 1100.19 § 14(l)(3)(c)(1)(a), https://www.va.gov/vhapublications/ViewPublication.asp?pub_ID=2910 (last visited August 18, 2018).

> For a physician who is a permanent employee, a proposed action for revocation of clinical privileges will be combined with an action to discharge.
>
> Bylaws Art. X § 5; Sealed Record, p. 001028-1029.

As discussed below, the actions of the VA ran afoul of these VA policies and bylaws.

### A. Both the imposition and the continued summary suspension of privileges were improper and in violation of Due Process.

Investigations of physician conduct do not always involve summary suspension. Sometimes, a physician may continue working with active clinical privileges while under investigation. Clinical privileges may be summarily suspended when the facility's failure to take such action may result in an "imminent danger to the health of any individual" and an expedited comprehensive review must take place within 30 days. VHA Handbook 1100.19 § 14(l).[8]

Summary suspension, reduction, and revocation of privileges are reportable to the National Practitioner Data Bank ("NPDB"), a web-based repository of reports containing information on certain adverse actions related to health care practitioners, established to ensure transparency and permanent record of previous

---

[8] Dep't of Veterans Affairs Veterans Health Administration Handbook 1100.19 § 14(l), https://www.va.gov/vhapublications/ViewPublication.asp?pub_ID=2910 (last visited August 18, 2018).

damaging performance.[9] The NPDB reporting requirement was acknowledged by the DAB. (Sealed Record, p. 002311.) In her Motion for Summary Judgment, Dr. Doran argued, *inter alia*, that her summary suspension should have been reversed. (Motion for Summary Judgment, RE 30, Page ID 2272, 2474.) A summary suspension lasting for longer than 30 days is reportable to the NPDB, and *separately reportable* from the final revocation. VHA Handbook 1100.17 §§ 9(a)(1), (2).[10] Summary suspension must also be separately vacated in order for the report to be voided on the NPDB.[11] The VA flagrantly disregarded the 30-day deadline to investigate a summary suspension action, which permanently tarnishes Dr. Doran's professional record on the NPDB.

The steps followed by the Columbus VA show a process unsupported by the relevant rules. On January 30, 2015    Dr. Doran received notice of summary suspension from performing endoscopic procedures but was permitted to see patients in an office visit setting. (Sealed Record, pp. 001999, 002166.) The record

---

[9] U.S. Department of Health & Human Services National Practitioner Data Bank website, https://www.npdb.hrsa.gov/topNavigation/aboutUs.jsp (last visited July 14, 2018).

[10] Dep't of Veterans Affairs Veterans Health Administration Handbook 1100.17 §§ 9(a)(1), (2), https://www.va.gov/vhapublications/ViewPublication.asp?pub_ID=2135 (last visited July 14, 2018).

[11] National Practitioner Data Bank Guidebook Chapter E: Reports, Reporting Adverse Clinical Privileges Actions, Summary Suspensions, https://www.npdb.hrsa.gov/guidebook/EClinicalPrivileges.jsp (last visited July 14, 2018).

is void of evidence that the notice was provided in writing; the specific factual basis is unknown; and there was no finding of "imminent danger" as required by VA policy. VHA Handbook 1100.19 § 14(l)(3)(c)(1).[12] Also on January 30, Patient A's case was referred for external management review. (Sealed Record, pp. 000694, 697.) The record contains two external management review reports, with unknown completion dates, but the reports show a "deadline for completion" of March 30, 2015. (Sealed Record, pp. 000694, 697.) This indicates the VA acted in bad faith and had no intention to complete a summary suspension review by the 30-day deadline required under VHA rules. VHA Handbook 1100.19 § 14(l)(3)(c)(1)(a).[13] In addition, the wrong process was followed. The Director must refer summary suspension review to the PSB who must complete review in fourteen (14) days. (Bylaws Art. IX §§ 3, 5(a); Sealed Record, p. 001023.)

Moving forward in time but procedurally backwards, on February 23, 2015 Glen Borchers, M.D., Chief of Gastroenterology and Dr. Doran's immediate supervisor, submitted a written request to Marc Cooperman, M.D., Chief of Staff, requesting a Professional Standards Board ("PSB") be convened. (Sealed Record,

---

[12] Dep't of Veterans Affairs Veterans Health Administration Handbook 1100.19 § 14(l)(3)(c)(1), https://www.va.gov/vhapublications/ViewPublication.asp?pub_ID=2910 (last visited August 18, 2018).

[13] Dep't of Veterans Affairs Veterans Health Administration Handbook 1100.19 § 14(l)(3)(c)(1)(a), https://www.va.gov/vhapublications/ViewPublication.asp?pub_ID=2910 (last visited August 18, 2018).

pp. 000744-745.) This written request should have been the initiating step. (Bylaws Art. IX §1; Sealed Record, p. 001022.) Also, on February 23, Keith Sullivan, Director of the Columbus VA, appointed a PSB to examine the allegations against Dr. Doran, and informed Dr. Doran in writing. (Sealed Record, pp. 740-742.) On March 9, 2015, the PSB issued its decision recommending a fitness for duty evaluation and mentoring/proctoring/education, did not recommend continued summary suspension or the revocation of clinical privileges. (Sealed Record, p. 000634-636.) The PSB decision came thirty-eight (38) days after summary suspension. The Columbus VA had only partially completed a comprehensive review; yet was seven (7) days past the thirty (30) day deadline to complete such review. VHA Handbook 1100.19 § 14(l)(3)(c)(1)(a).[14] Director Sullivan did not lift the summary suspension despite the PSB recommendations and untimely progress of the investigation. The matter was referred to the Medical Executive Committee ("MEC") and on March 13, 2015, Dr. Doran was given notice that the MEC voted to permanently revoke her privileges. (Sealed Record, p. 000544.)

In addition to the error in the timing and order of the procedures, the record is absent of evidence that proper notice and opportunity to respond to the summary suspension was afforded to Dr. Doran creating another due process violation.

_____

[14] Dep't of Veterans Affairs Veterans Health Administration Handbook 1100.19 § 14(l)(3)(c)(1)(a), https://www.va.gov/vhapublications/ViewPublication.asp?pub_ID=2910 (last visited August 18, 2018).

Loudermill, 470 U.S. at 546. The first written notice to Dr. Doran came on February 23, 2018 (twenty-four (24) days after summary suspension) notifying her of the PSB investigation and stating only as to Patient A: "… concerns have been raised to suggest that aspects of your clinical practice do not meet the accepted standards of practice and potentially constitute a threat to patient welfare, as follows: 1) Care delivered to [Patient A] on 1/26/2015." (Sealed Record, p. 000740.) No specifics were provided. Also, this letter phrases the threat to patient welfare as "potential" which is not synonymous with "imminent." A finding of "imminent danger" was required to justify summary suspension, and by the VA's own admission, there was no imminent danger; thus, summary suspension should have ended here. If it would have ended here, the summary suspension would have lasted fewer than thirty (30) days and any procedural error would have been harmless because it would not have left a permanent mark on Dr. Doran's professional record. The VA could have continued with an investigation without contemporaneous summary suspension.

Summary suspension procedures may not be relaxed at the whim of the VA, as the consequences are severe and permanent. The VA's failure to follow its own procedures constitutes a due process violation, and the summary suspension decision must be reversed. See, Vitarelli, 359 U.S. at 547 (Frankfurter, J., concurring).

**B.** __The VA failed to provide notice of the basis for the charges and the__
__specific law, regulation, policy, procedure, practice, or other specific__
__violation with respect to each charge.__

The notice of proposed action must contain "the basis for each charge, the adverse actions that could be taken if the charges are sustained, a statement of any specific law, regulation, policy, procedure, practice, or other specific instruction that has been violated with respect to each charge, and a file containing all the evidence in support of each charge" 38 U.S.C. §7462 (b)(1)(A). Additionally, in cases alleging breach of standard of medical care, the failure to establish the recognized standards of the medical community is fatal to the presentation of a prima facie case. Bruni v. Tatsumi, 46 Ohio St. 2d 127, 133, 346 N.E.2d 673, 678 (1976)

The VA failed to provide such notice. The *Proposed Removal and Revocation of Clinical Privileges* letter dated June 2, 2015 states certain facts but fails to provide notice of specific policies or standards Dr. Doran allegedly violated. Under Ohio law, the standard of care is that owed to a patient by the community of physicians in the same specialty. Bruni, 46 Ohio St. 2d at 134. Notably, the external management review opinions came from one anesthesiologist and one gastroenterologist. (Sealed Record, pp. 000705-713.) Both were asked to opine on standard of care. However, standard of care for an anesthesiologist is

necessarily different from a gastroenterologist. The prejudice resulting from the failure to specify the standard of care is apparent by the make-up of the DAB and its decision. The DAB was comprised of one general surgeon, one anesthesiologist, and one gastroenterologist. (Sealed Record, pp. 001275-1276.) Each of these physicians were free to view the case applying a different standard, since no standard was defined.

Furthermore, foreseeability of harm is relevant to a physician's standard of care; and a correct, general statement of the law regarding the standard of care or the breach of that standard includes the element of foreseeability. Cromer v. Children's Hosp. Med. Ctr. of Akron, 2015-Ohio-229, ¶ 28, 142 Ohio St. 3d 257, 264, 29 N.E.3d 921, 930. In this case, (in addition to lack of proof discussed below), there was neither notice nor allegation that Patient A's continued critical illness was a *foreseeable* result of any act alleged in this case.

Due process requires "notice and an opportunity to respond" and the allegation of breach of standard of care in this case failed to provide meaningful notice. Loudermill, 470 U.S. at 546.

## C. The DAB Strayed from the Allegations in Charge 1, Specification 1, in Sustaining the VA's Action.

Charge 1, Specification 1 alleges: (1) excessive medication; and (2) resulting extended suffering and severe outcome for Patient A. (Sealed Record, p. 000001.)

It does not expressly allege subsequent acts, i.e. substandard care or misconduct in Dr. Doran's performance during the code blue. The DAB review is limited to the issues set forth in the underlying agency action and cannot *sua sponte* supplement the issues set forth in the proposed removal. See, VA Handbook 5021, Part V.[15]

Nonetheless, a significant part of the DAB's analysis in upholding Charge 1 Specification 1 was that Dr. Doran performed poorly once the emergency occurred. (Sealed Record, p. 002303.) The DAB's compounding of accusations runs afoul of both the VA Handbook and due process. Compounded accusations deprived Dr. Doran of "notice and an opportunity to respond" in violation of her Constitutional rights. <u>Loudermill</u>, 470 U.S. at 546.

## D. **Improper *ex parte* influence occurred during the investigation at the Columbus VA.**

Particularly egregious was the violation of the *ex parte* rule that occurred during Dr. Doran's investigation. VA Handbook 5021/10, Part II, Chapter 1 §9 (h)(8)[16] provides:

> Officials involved in taking a major adverse action against an employee must observe the prohibitions against improper "ex parte" communications. Department officials may communicate with each

---

[15] Dep't of Veterans Affairs Handbook 5021, Part V, Chapter 1, § 8(l)(1), www.va.gov/vapubs/viewPublication.asp?Pub_ID=231 (last visited August 15, 2018).

[16] Dep't of Veterans Affairs Handbook 5021, Part II, Chapter 1, § 9(h)(8), www.va.gov/vapubs/viewPublication.asp?Pub_ID=231 (last visited August 15, 2018).

other during the decision-making process; however, it is improper for an interested party (e.g. supervisor, proposing official), to pressure the decision official into making a particular decision. Such communications may support reversal of the action upon appeal.

Improper *ex parte* communications took place in this case, which the DAB recognized but failed to call out for its impropriety; instead erroneously finding that due process had been afforded. (Sealed Record, p. 2299.) The DAB decision states that Dr. Borchers was Dr. Doran's immediate supervisor and the main source of information presented to Dr. Cooperman, the PSB and the MEB. (Sealed Record, pp. 2302, 001997, line 17.) Dr. Borchers was the proposing official recommending that a PSB be assembled. (Sealed Record, pp. 000744-745.) The DAB recognized that Dr. Borchers not only presented his conclusions before the PSB and the MEB, his statements to the PSB and MEB were also "exaggerations or misrepresentations, and were different from his statements under oath." (Sealed Record, p. 002299.) Dr. Borchers' bias was obvious to the DAB. The decision reads:

> His presentations should be looked at having consideration that there were personal difficulties between Dr. Borchers and Dr. Doran, and that he had been pursuing a course of progressive discipline against Dr. Doran for the preceding 6 months. His presentations before the PSB and MEB contained many inaccuracies (see above) regarding the details of patients A, B, C, D, both when summarizing the events, and the outside Peer Reviews.

(Sealed Record, p. 002302.) The is no dispute that Dr. Borchers not only violated the *ex parte* prohibition found in VA Handbook, but tarnished the process with

factual inaccuracies and personal bias. Id. This failure caused unjust discrimination and ran afoul of fundamental concepts of fair play and due process. Brantley, 637 F. App'x at 896-97. As a consequence, this Court must reverse.


## II.     THE VA ACTIONS WERE "UNSUPPORTED BY SUBSTANTIAL EVIDENCE" AND "ARBITRARY, CAPRICIOUS, AN ABUSE OF DISCRETION, OR OTHERWISE NOT IN ACCORDANCE WITH LAW." 38 U.S.C. § 7462(F)(2)(A) AND (C).

An agency's decision is arbitrary and capricious if  "the agency has relied on factors which Congress has not intended it  to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Taylor v. Principi, 92 F. App'x 274, 276-77 (6th Cir. 2004). Also by this standard, a lower decision may be upheld when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome." Admin. Comm. of the Sea Ray Emps.' Stock Ownership & Profit Sharing Plan v. Robinson, 164 F.3d 981, 989 (6th Cir. 1999). While this standard of review is "highly deferential," it "does not automatically mandate adherence to [an agency's decision]"—that is, it is not "without some teeth." McDonald v. W.-S. Life Ins. Co., 347 F.3d 161, 172 (6th

Cir. 2003). Courts should not merely rubber stamp agency decisions. <u>Moon v. Unum Provident Corp</u>., 405 F.3d 373, 379 (6th Cir. 2005).

This case involves discharge from service, which is referred to within the VA as a "major adverse action." VA Handbook 5021, Part II, Chapter 1, § 9(a).[17] When taking a major adverse action against an employee, the VA bears the burden of proving by a preponderance of the evidence the charges that form the basis for the action and must establish that the penalty chosen is within the tolerable limits of reasonableness. <u>Id.</u> at § 9(b).

"Substantial evidence" means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. <u>Consolo v. Fed. Maritime Comm'n</u>, 383 U.S. 607, 620, 86 S. Ct. 1018, 16 L. Ed. 2d 131 (1966). It is more than a scintilla, but less than a preponderance, of the evidence." <u>R.P. Carbone Constr. Co. v. Occupational Safety & Health Review Comm'n</u>, 166 F.3d 815, 818 (6th Cir. 1998). The evidence "must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." <u>Payne v. Comm'r of Soc. Sec.</u>, 402 F. App'x 109, 111 (6th Cir. 2010). A decision will be upheld even if conflicting evidence exists or another outcome could be supported by the evidence. <u>Consolo,</u> 383 U.S. at 620.

---

[17] Dep't of Veterans Affairs Handbook 5021, Part II, Chapter 1, § 9(a), <u>www.va.gov/vapubs/viewPublication.asp?Pub_ID=231</u> (last visited August 15, 2018).

Hearsay may constitute substantial evidence in an administrative hearing if relevant and material, but the court should consider:

> (1) the independence or possible bias of the declarant, (2) the type of hearsay material submitted, (3) whether the statements are signed and sworn to as opposed to anonymous, oral, or unsworn, (4) whether the statements are contradicted by direct testimony, (5) whether the declarant is available to testify and, if so, (6) whether the party objecting to the hearsay statements subpoenas the declarant, or whether the declarant is unavailable and no other evidence is available, (7) the credibility of the declarant if a witness, or of the witness testifying to the hearsay, and finally, (8) whether the hearsay is corroborated.

R.P. Carbone, 166 F.3d at 819. Uncorroborated hearsay or rumor does not constitute substantial evidence. Consol. Edison Co. of N.Y. v. N.L.R.B., 305 U.S. 197, 230, 59 S. Ct. 206, 83 L. Ed. 126 (1938).

## A. **Standard of Care Analysis: Allegation of Excessive Sedation.**

Charge 1 Specification 1 reads:

On January 26, 2015, Patient A was scheduled for an esophagogastroduodenoscopy ("EGD") and colonoscopy. This patient had multiple comorbidities, and you assessed him as an ASA II. The procedure was not done under monitored anesthesia care (MAC). Based on the patients [sic] complex medical history you should have considered initiating the sedation process with lower doses of medication or asking for assistance from Anesthesiology. Instead, you gave him a rapid dose of 100 milligrams of Fentanyl and 2 milligrams of versed intravenous push. Given the patient's medical history, this was an excessive amount of medication. The patient began to desaturate, and became unresponsive. A code blue was called. The patient was critically ill and was hospitalized for over 30 days. He has since been discharged to a nursing home, whereas, previously he was living independently. The third party gastroenterologist and

anesthesiologist who reviewed this case were critical of the care you provided.

(Sealed Record, p. 000001.) This Specification really encompasses one single cause and an effect: excessive medication; and Patient A's resulting critical illness, hospitalization, and admission to a nursing home. The cause and effect as alleged are not supported by substantial evidence.

The DAB sustained Charge 1 Specification 1, stating, "… the method of sedation was reckless and dangerous and led directly to the airway collapse." (Sealed Record, p. 002303.) The record does not support the DAB finding of Dr. Doran's reckless and dangerous conduct. There is no evidence of a breach of standard of care in the administration of the sedation, and Charge 1 Specification 1 should not have been sustained.

The PSB record contains documents and statements prepared by external peer reviewers- one anesthesiologist, and gastroenterologist Dr. Agarwal. (Sealed Record, pp. 000705-713.)

First, the anesthesiologist stated that Dr. Doran assessed the patient and the risk: "it appears that the H&P together with the pre-moderate sedation assessment meets the minimum standards of VHA directive 1073." (Sealed Record, pp. 000705.) As to the administration of this type of sedation, the physician stated, "Choosing to proceed very cautiously would be an appropriate decision … I am not aware of any hard criteria in the community mandating that a patient with these

comorbidities may not undergo moderate sedation." (Sealed Record, pp. 000706.) The opinion continued, "The decision to include an anesthesia provider would be based on the proceduralist's evaluation of the total patient and any concerns that they could not provide safe sedation with their skill-set … a case by case decision." Id. Most notably, as to the dose, the anesthesiologist stated: "With a significant sleep apnea history, most would have given lower doses of versed and fentanyl. Most would have separated the dosing of each medication." (Sealed Record, p. 000706.) These written opinions of the anesthesiologist which came from external management review were the closest the VA's evidence came to faulting Dr. Doran on her choice and administration of the sedation medications. This anesthesiologist is not of the same specialty as Dr. Doran and is not qualified to opine on gastroenterologist standard of care. Moreover, the opinion states only, "most would have…" which is not an opinion concerning Dr. Doran's breach of standard of care. Id. In fact, this physician expressly declined to provide opinions in response to questions using the phrase "standard of care." (Sealed Record, pp. 000634-636.)

Dr. Doran presented several expert opinions. Ronald S. Miller, M.D. opined that the doses of fentanyl and midazolam were appropriate for the slightly hypertensive state and comorbid conditions. (Sealed Record, p. 000163.)

Michael H. Frankel, M.D. opined that the drug selection was appropriate and the dose selection met the standard of care based on the patient's weight, anxiety, and hypertension. There was no deviation in standard of care. (Sealed Record, pp. 001202-1204.)

Dr. Sangeeta Agrawal testified that Dr. Doran's Fentanyl dose was "not against the guidelines" and that her judgment was correct. (Sealed Record, pp. 001754-1757).

The DAB gave deference to one expert opinion- Gregory Gibbons, M.D., stating, "The Peer reviews supplied by Dr. Doran were considered biased and not useful, with the exception of Dr. Gregory Gibbons, MD, which was well reasoned and presented conclusions that were close to those arrived at by the Board." (Sealed Record, p. 002299.) Dr. Gibbons' opinion was favorable to Dr. Doran, and contained the following comments concerning the allegation of excessive sedation:

1) "… I would not consider it inappropriate for conscious sedation in an outpatient setting. The indication was appropriate and the pre-procedure evaluation and the informed consent were good."

2) "The drug selection doses were reasonable in a patient this size."

3) "The issue here is not the amount of sedation ..."

4) "The hypertension noted was unlikely related to either of the medications that he received or the sedation …"

5) "I would not expect any long term sequella from asystole of less than one minute …"

6) "I really noted no deviations from the standard of care on the medical record provided to me."

(Sealed Record, pp. 001209-10.)

The DAB ran astray from the evidence, found that the care of Patient A was "so removed from the standard of care," and sustained the allegation. (Sealed Record, p. 002310). According to VA Handbook 5021, Part V, Chapter 1, § 9(b),[18] the findings of a Disciplinary Appeals Board will be based on the evidence presented, including evidence developed by the Board. This does not mean that the DAB can make up facts not in evidence. It means that the DAB can call witnesses to develop evidence. VA Handbook 5021, Part V, Chapter 1, § 8(e).[19] The cause must be reversed for lack of substantial evidence. See, Consolo, 383 U.S. at 620. The evidence would support a directed verdict in favor of Dr. Doran rather than the VA if this were a trial. See, Payne, 402 F. App'x at 111. Furthermore, the DAB's decision is the exact opposite of the evidence before the agency, rendering it arbitrary and capricious. Taylor v. Principi, 92 F. App'x at 276-77.

---

[18] Dep't of Veterans Affairs Handbook 5021, Part V, Chapter 1, § 9(b), www.va.gov/vapubs/viewPublication.asp?Pub_ID=231 (last visited August 15, 2018).

[19] Dep't of Veterans Affairs Handbook 5021, Part V, Chapter 1, § 8(e), www.va.gov/vapubs/viewPublication.asp?Pub_ID=231 (last visited August 15, 2018).

## B. Standard of Care Analysis: Allegation of Severity of Outcome.

The rumored severity of the outcome for Patient A led the DAB to sustain Charge 1 Specification 1, as well as uphold the penalty. (Sealed Record, pp. 002303, 002310-2311.) The DAB wrote:

> Unfortunately, [Dr. Doran's sedation] was the initiating factor in a chain of events that caused severe injury to a patient. The result is that a significant tort claim has been filed against the facility. The existence of this tort was mentioned by Mr. Sullivan and Dr. Cooperman as having bearing on their decision.

(Sealed Record, p. 002310.) There is no evidence whatsoever to show the patient's condition after he left the Columbus VA. In fact, the DAB recognized prior to the hearing that Patient A's further clinical course occurred outside of the Columbus VA facility and the records were not part of the record in this case. (Sealed Record, p. 000976).

Dr. Cooperman testified, "I felt the outcomes were so severe that the proposed termination was the proper course. (Sealed record pp. 000726, 002310.) Mr. Sullivan testified, "Part of the discussion was the bad outcome" and "it was part of the thought process." (Sealed Record, pp. 000803-804.) The evidence in the record does not support this conclusion. It is not disputed that Patient A was transferred to a nearby hospital emergency room after the sedation event serving as the basis for Charge 1 Specification 1. However, the record is riddled with references to Patient A's subsequent and continued critically ill condition to justify

Dr. Doran's termination. Cross examination of Dr. Cooperman revealed that, in reality, Dr. Cooperman was aware of no evidence of Patient A's condition after the patient had left Columbus VA:

> MS. NAGEL:     The relevance is that she - - the event with Patient A, it has been talked a lot about how Dr. Doran's care caused the entire history of events over the next year.
>
> CHAIRMAN O'HARE: Okay. Doctor, do you have any evidence - - do you have any knowledge of a second event that took place while Patient A was an inpatient at - -
>
> THE WITNESS: No. Other than Dr. Doran's allegation or statement that - - that attempting to deflect some of the blame for his condition onto the staff at Mt. Carmel.

(Sealed Record, p. 002009.) Likewise, the Columbus VA Director Mr. Sullivan was unaware of evidence of Patient A's condition since the patient left the Columbus VA:

> Q:     Okay. Do you have any medical evidence or medical documents regarding Patient A since he left this VAMC last year?
> A:     I have not seen any.
> Q:     So you can't say for sure what caused his extended medical problems?
> A:     (Shakes head.)
> Q:     You have to say it out loud.
> A:     No.

(Sealed Record, p. 002074.) Patient A's assumed bad outcome was the basis for the decision, but there is no substantial, reliable evidence of the patient's condition after leaving the Columbus VA. The conclusions concerning the patient's

condition are not credible enough to call hearsay. Not one witness was able to testify as to the source of the information, making it nothing more than rumor. Uncorroborated hearsay or rumor does not constitute substantial evidence. <u>Consol. Edison</u>, 305 U.S. at 230. Not only was evidence lacking, a reasoned explanation, based on the evidence, for this particular outcome" was lacking, warranting reversal. <u>Admin. Comm. of the Sea Ray Emps.' Stock Ownership & Profit Sharing Plan</u>, 164 F.3d at 989.

   **C. <u>Charge 3 allegation of inappropriately documenting in a paper record cannot be sustained.</u>**

Charge 3 reads:

Specification: On March 16, 2015, you added an addendum to the CPRS note of Patient A. In the addendum, you specified the specific times that you have alleged that you gave a verbal order for Narcan to be administered to the patient. No one in the room heard you give a verbal order to administer Narcan to the patient. This addendum was added well after the adverse event on January 26, 2015, and after you received notice that your actions were under Investigation.

You asked Janet Gerkin, the RIM Involved In the case, to cosign your addendum that indicated that you gave a verbal order for Narcan. Ms. Gerkin declined to cosign the addendum, and told you again that she did not hear you give a verbal order.

Based on the testimony of the other personnel involved in the event, the AIB concluded that you did not, in fact, give a verbal order for Narcan during the event. Your addendum is contradictory to all other testimony of the other personnel involved in the event, as well as the other documented CPRS accounts of the event.

(Sealed Record, pp. 000002-3.) The allegation as written clearly alleges

impropriety as entering information into the patient record that was "contradictory"

to all other counts of the event. However, the DAB disagreed with the allegation

that Dr. Doran lied about the Narcan order when it declined to sustain Charge 2

alleging lack of candor. (Sealed Record, pp. 002305-2306.)

Further, as to Charge 3, the DAB found that Dr. Doran followed

recommended guidelines for delayed entries. (Sealed Record, p. 002307.)[20] The

record was dated, signed, referenced the original entry, and the reason for the entry

explained. Id. The DAB nonetheless sustained the charge stating, "… there is still

an obligation that [the delayed entries] be relevant and accurate." Id. The DAB, in

Charge 2, already decided that there was no dishonesty surrounding the Narcan

order; therefore, the record entry was accurate. (Sealed Record, pp. 002305-2306.)

Polar-opposite conclusions cannot simultaneously be true.

The DAB found that the entry was self-serving. (Sealed Record, p. 002307.)

This goes beyond the charge and specification as alleged. Additionally, accurate

documentation of a verbal order for a life-saving medication during a code blue

---

[20] The dissenting opinion of DAB member Dr. Sakwi references provisions of
"VHA Directive 1907.1" to support the conclusion that failure to timely document
was inappropriate. There is no such thing as "VHA Directive 1907.1." VHA
Handbook 1907.01 exists, but was published on March 19, 2015, three days after
Dr. Doran's addendum to the medical record. Dep't of Veterans Affairs Veterans
Health Administration Handbook 1907.01,
https://www.va.gov/vhapublications/ViewPublication.asp?pub_ID=3088 (last
visited August 15, 2018).

cannot be construed as anything but relevant, the author's selfish motivations notwithstanding. The DAB obviously overlooked the requirement that the records also be complete. (Bylaws, Medical Staff Rules and Regulations, §6(A)(x); Sealed Record, p. 001044.)

The Bylaws state that reports of diagnostic and therapeutic procedures must be accomplished within 24 hours. (Bylaws, Medical Staff Rules and Regulations, §6(A)(iv); Sealed Record, p. 001043.) Nonetheless, there is a provision discussing late entries and what those entries must contain: actual date of event versus date of documentation, and reason for delay. (Bylaws, Medical Staff Rules and Regulations, §6(A)(xviii); Sealed Record, p. 001044.) This shows that late entries are not unheard of. One can fathom the occasional need to supplement a record due to mistaken omission. There was no impropriety in the late documentation, it was merely late. The DAB's explanation for its decision runs counter to both the allegation as written as well as the evidence before the agency. It must be reversed as arbitrary and capricious. Taylor, 92 F. App'x at 276-77.

**D. Applying the Douglas Factors, the termination is not warranted.**

The Douglas factors, first laid out in Douglas v. Veterans Admin., 5 M.S.P.B. 313, 5 M.S.P.R. 280 (1981), represent a non-exhaustive list of factors that courts and review boards must consider when determining appropriate penalties. Those factors include:

1) The nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated;

2) The employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position;

3) The employee's past disciplinary record;

4) The employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability;

5) The effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties;

6) Consistency of the penalty with those imposed upon other employees for the same or similar offenses;

7) Consistency of the penalty with any applicable agency table of penalties;

8) The notoriety of the offense or its impact upon the reputation of the agency;

9) The clarity with which the employee was on notice of any rules that where violated in committing the offense, or had been warned about the conduct in question;

10) Potential for the employee's rehabilitation;

11) Mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of others involved in the matter; and

12) The adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others.

5 M.S.P.B. at 332. While the DAB need only consider the factors relevant to the case, a failure to consider a significant mitigating circumstance constitutes an abuse of discretion, warranting reversal. Van Fossen v. Dep't of Housing & Urban Development, 748 F.2d 1579, 1581 (Fed. Cir. 1984).

With respect to Factor 1, the prolonged harm to Patient A was no more than rumor. Moreover, the DAB itself recognized, "Dr. Doran initiated the emergency, but is not completely responsible for the consequences. (Sealed Record, p. 00203.) With respect to Factors 3 and 4, the DAB merely stated there was no prior discipline. The DAB failed to consider mitigating facts: the letter in support from a veteran, and her exemplary remarks on her evaluations. (Sealed Record, pp. 1216-1217.) With respect to Factor 8, Notoriety, much is made of the consequences to patient "A," but no medical records establishing any consequences or record of the so-called "tort action" were made part of the record. With respect to Factor 9, the DAB ignored this factor. Dr. Doran was never given any warnings regarding any patient treatment issues, as she had none previous to this event. With respect to

Factor 10, Director Sullivan believed that Dr. Doran could be rehabilitated, but the DAB chose to ignore it. (Sealed Record, pp. 002060, 002310.) With respect to Factor 11, the DAB completely ignored the harassment of Dr. Borchers as a mitigating factor, though it acknowledged it earlier in its decision. (Sealed Record, p. 2302.) With respect to Factor 12, the DAB never considered it. DAB member Dr. Pisegna agreed termination was inappropriate and dissented from the majority opinion. (Sealed Record, pp. 002311-2312.) The majority's failure to consider this factor at all warrants reversal. Van Fossen, 748 F.2d at 1581.

### III.    CONCLUSION

For the foregoing reasons, Plaintiff-Appellant Trisha Doran, M.D. respectfully requests that the Court of Appeals reverse the District Court's denial of Dr. Doran's motion for summary judgment, and its decision to affirm the Disciplinary Appeals Board action.

August 23, 2018                         Respectfully Submitted,

                                        /s/ Laura A. Perkovic
                                        Laura A. Perkovic
                                        CHAPMAN LAW GROUP
                                        470 Olde Worthington Rd. Ste. 200
                                        Westerville, Ohio 43082
                                        Tele: (614) 360-3848
                                        Fax: (248) 644-6324
                                        Email: LPerkovic@chapmanlawgroup.com
                                        *Counsel for Appellant Trisha Doran, M.D.*

# CERTIFICATE OF COMPLIANCE

## WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE- STYLE REQUIREMENTS

1. This document complies with the type-volume limit of <u>Fed. R. App. P. 32(a)(7)(B)</u> because, excluding the parts of the document exempted by <u>Fed. R. App. P. 32(f)</u>:

   _X_   this document contains _____9,367_____ words, or

   ___   this brief uses a monospaced typeface and contains _____ lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

   _X_   this document this document has been prepared in a proportionally spaced typeface using _____Times New Roman_____ in _____14-point font_____, or

   ___   this document has been prepared in a monospaced typeface using _____ with _____.


/s/                      _/s/ Laura A. Perkovic_

Attorney for            _ Appellant Trisha Doran, M.D._

Dated:                   _ August 23, 2018_

# CERTIFICATE OF SERVICE

The electronic signature below certifies that all parties or their counsel of record have been electronically served with this document as of the date of filing.

August 23, 2018

<div style="margin-left: 40%;">

Respectfully Submitted,

/s/ Laura A. Perkovic
Laura A. Perkovic
CHAPMAN LAW GROUP
470 Olde Worthington Rd. Ste. 200
Westerville, Ohio 43082
Tele: (614) 360-3848
Fax: (248) 644-6324
Email: LPerkovic@chapmanlawgroup.com
*Counsel for Appellant Trisha Doran, M.D.*

</div>

# ADDENDUM

## DESIGNATION OF DOCUMENTS
### 6 Cir. R. 30(g)(1);
### 6 Cir. R. 28(b)(1)(A)(i)

| DESCRIPTION | RE# | Page ID# |
|---|---|---|
| Complaint | 1 | 1-23 |
| Final Administrative Action of the United States Department of Veterans Affairs | 1-1 | 24-47 |
| Plaintiff Trisha Doran, M.D.'s Motion for Summary Judgment | 30 | 2449-2506 |
| Defendants' Combined Motion to Affirm the Decision of the Disciplinary Appeals Board and Response in Opposition to Plaintiff's Motion for Summary Judgment | 31 | 2507-2553 |
| Plaintiff Trisha Doran, MD's Memorandum Contra Defendants' Robert McDonald, et al Motion for Summary Judgment / Reply in Support of Motion for Summary Judgment | 36 | 2560-2602 |
| Defendants' Reply in Support of Their Motion to Affirm the Decision of the Disciplinary Appeals Board | 38 | 2627-2655 |
| Opinion & Order | 39 | 2656-2686 |
| Judgment in a Civil Action | 40 | 2687-2688 |
| Notice of Appeal | 43 | 2752-2753 |
| Sealed Administrative Record | | 000001-002321[21,22] |

[21] Sealed Administrative Record citations will refer to 6-digit Bates-stamped numbers in the bottom right-hand corner of each page of the sealed record.

[22] The sealed record contains duplicate documents. Appellant will reference only one of the documents.

| | | |
|---|---|---|
| Proposed Removal and Revocation of Clinical Privileges dated June 2, 2015 | | 000001-000004 |
| Notification of Personnel Action | | 000169 |
| Removal Letter dated August 12, 2015 | | 000171-000172 |
| PSB Meeting Summary dated March 2, 2015 | | 000303-000330 |
| AIB Report of Investigation dated May 7, 2015 | | 000341-000347 |
| MEB letter proposing revocation of clinical privileges dated March 13, 2015 | | 000544 |
| MEB Meeting Transcript of March 13, 2015 | | 000545-000632 |
| Columbus VA Bylaws | | 000983-001052 |
| MEB Meeting Transcript of March 12, 2015 | | 001066-001167 |
| Opinion Letter from Michael H. Frankel, M.D. dated November 25, 2015 | | 001200-001206 |
| Affidavit of Gregory D. Gibbons, M.D. dated November 23, 2015 | | 001208-001213 |
| DAB Hearing Transcript, January 25-26, 2016 | | 001270-002297 |
| DAB Decision | | 002298-002321 |